IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KRISTOPHER BENJAMIN,** | : | Civil No. 3:20-CV-34 |
| | : | |
| **Plaintiff,** | : | |
| | : | **(Magistrate Judge Carlson)** |
| v. | : | |
| | : | |
| **KMB PLUMBING & ELECTRICAL, INC., et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION

**I.   Statement of Facts and of the Case**

The Federal Arbitration Act provides for the enforcement of arbitration clauses in contracts and states that: "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . , shall be valid, irrevocable, and enforceable . . . ." 9 U.S.C. § 2. However, arbitration rights are a function of the contractual arrangement between the parties, and the ability to compel arbitration in federal court often turns of the language used in the contract and the parties' reasonable understanding of that language. Such questions may be clear from the pleadings or may require factual development. Thus, depending upon the clarity of the agreement, and the factual context of the case, the ability to enforce

1

an arbitration clause in a contract may be decided as a matter of law on the pleadings; as a matter of law based upon the undisputed material facts; or as a matter of fact following an evidentiary proceeding.

This case, which comes before us for consideration of a second motion to compel arbitration, (Doc. 18), is an action brought by a former employee, Kristopher Benjamin, against his former employer, KMB Plumbing and Electrical, Inc. ("KMB"), and its owner, Kevin Berry. (Doc. 1). In his complaint, the plaintiff alleged that Berry, acting on behalf of KMB, harassed and discriminated against him on the basis of race and sex. (Id., ¶¶ 19-41). In addition, Benjamin asserted that the defendants failed to properly pay him for overtime that he worked. (Id., ¶¶ 43-50).

Based on these allegations, Benjamin brought five claims against the defendants, alleging that their actions constituted: (1) discrimination under Title VII of the Civil Rights Act; (2) retaliation under Title VII; (3) violation of the Fair Labor Standards Act; (4) violations of the Pennsylvania wage laws; and (5) discrimination under 42 U.S.C. § 1981. (Id., ¶¶ 60-80). In response to Benjamin's complaint, the defendants filed a motion to dismiss, alleging that the claims were subject to an arbitration clause, that this court should direct the parties to engage in arbitration, and that the proceedings should be stayed until the resolution of such arbitration. In support of this proposition, the defendants attached what they asserted was the

complete agreement between the parties, spanning seven pages in length, and containing a global arbitration provision, which provides as follows:

> VII.   **Arbitration of Disputes**
>
> **A. All disputes over the terms of this Agreement, or any other work-related dispute between the parties, shall be submitted to arbitration in the event it is not resolved among the parties within sixty (60) days from the date of notification of the dispute.**
>
> **B. Either party may request arbitration.**
>
> **C. The arbitrator's decision shall be final and binding. Enforcement may be sought through injunction proceedings in an appropriate Court of Common Pleas. If the arbitration award calls for the payment of money, the award may be filed as a judgment in the appropriate Court of Common Pleas.**
>
> **D. The costs of the arbitration shall be borne by both parties equally unless the arbitrator assigns them to one party in his or her award.**
>
> **F. [sic] The procedural rules of the American Arbitration Association shall apply.**
>
> **G. . . . . [E]ach party is required to furnish the other party with a witness and exhibit list fourteen (14) days prior to the arbitration hearing. Failure to comply with this paragraph shall preclude the admission of any evidence.**

(Doc. 5-1, at 5).

In response, Benjamin noted that the agreement contained the arbitration provision on page six, but that the preamble to the contract indicated that the agreement contained four pages. He then asserted that: "Upon review of the facts, it

3

remains strikingly clear that Plaintiff was given an incomplete agreement to sign, and that Defendants apparently took steps to conceal the entirety of the agreement to obtain Plaintiff's assent to such." (Doc. 6-1 at 16).[1] For their part, the defendants rejoined that any attack of the validity of the arbitration agreement should be brought before an arbitrator since this is an issue within their jurisdiction under the Federal Arbitration Act ("FAA")—the guiding law behind this agreement.

We construed the motion as a motion to compel arbitration since it did not address the merits of the plaintiff's complaint and instead only raised issued regarding the parties' alleged agreement to arbitrate. We denied the motion to compel arbitration, without prejudice to renewal, finding that there was an unresolved factual dispute regarding the authenticity of the arbitration provision of this contract and directing the parties to engage in limited discovery. (Doc. 14).

We are now faced with a renewed motion to compel arbitration and a more fulsome factual record following limited discovery. This motion has been fully briefed by the parties and is, therefore, ripe for resolution. After review, we find that Benjamin has conceded the existence of the arbitration clause in the agreement he signed, and we will therefore grant the motion to compel arbitration.

---

[1] At that time, Benjamin also raised several issues relating to the enforceability of the agreement between the parties: he argued that the agreement is void due to failure of consideration and unconscionability, and raised an issue of waiver based on defendants' lawsuit in the Court of Common Pleas of Monroe County regarding a work-related dispute.

## II. Discussion

### A. The Federal Arbitration Act—Standard of Review

The Federal Arbitration Act provides, in part, as follows:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The Act "creates a body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes." Century Indem. Co., v. Certain Underwriters at Lloyd's London, 584 F.3d 513, 522 (3d Cir. 2009). Congress enacted the Federal Arbitration Act in order "to overrule the judiciary's longstanding reluctance to enforce agreements to arbitrate and its refusal to put such agreements on the same footing as other contracts, and in the FAA expressed a strong federal policy in favor of resolving disputes through arbitration." Id. (citations omitted).

The right to arbitration, however, is entirely a creature of contract. "Because '[a]rbitration is a matter of contract between the parties,' a judicial mandate to arbitrate must be predicated upon the parties' consent. Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd., 636 F.2d 51, 54 (3d Cir. 1980). The Federal Arbitration Act (the 'FAA'), 9 U.S.C. § 1, *et seq.*, enables the enforcement of a

contract to arbitrate, but requires that a court shall be 'satisfied that the making of the agreement for arbitration . . . is not in issue' before it orders arbitration. Id. § 4." Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764, 771 (3d Cir. 2013). Given that arbitration is a contractual matter, prior to compelling arbitration pursuant to the FAA, a court must first determine that (1) an enforceable agreement to arbitrate exists, and (2) the particular dispute falls within the scope of the agreement. Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 160 (3d Cir. 2009) (citation omitted). In ruling upon motions to compel arbitration, we are cautioned that: "Doubts should be resolved in favor of coverage." First Liberty Inv. Grp. v. Nicholsberg, 145 F.3d 647, 653 (3d Cir. 1998) (internal quotation marks omitted).

Yet, when addressing a motion to compel arbitration, we must also be mindful of the procedural posture of the case, since that procedural posture defines the scope of our review. See Guidotti, 716 F.3d at 771-76. In this regard, the Third Circuit has provided some guidance as to which standards may be appropriate under the given circumstances in a particular case. According to the Court:

> [W]hen it is apparent, based on the face of the complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay. But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on the question.

6

Id. at 776 (citation omitted) (internal quotation marks omitted). Any time that a court finds that it must make findings in order to determine arbitrability, pre-arbitration discovery may be warranted. Id. at 775 n.5. If a court elects to deny a motion to compel arbitration under Rule 12(b)(6) in order allow discovery on the question of arbitrability, "[a]fter limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard." Id. at 776. Finally, "[i]n the event that summary judgment is not warranted because 'the party opposing arbitration can demonstrate, by means of citations to the record,' that there is 'a genuine dispute as to the enforceability of the arbitration clause,' the 'court may then proceed summarily to a trial regarding "the making of the arbitration agreement or the failure, neglect, or refusal to perform the same," as Section 4 of the FAA envisions.' " Id. at 776 (citation omitted).

**B.    The Scope of the Federal Arbitration Act (FAA)**

The Federal Arbitration Act (FAA) provides in part as follows:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The FAA then provides parties whose federal court disputes may also be subject to arbitration with a specific means of compelling pre-litigation arbitration of their dispute. Under the FAA:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.

When the court determines that a particular dispute brought in federal court is subject to an arbitration agreement, the FAA prescribed the course which we must follow, and states that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

The FAA "creates a body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes." Century Indem. Co.,

v. Certain Underwriters at Lloyd's London, 584 F.3d 513, 522 (3d Cir. 2009). Congress enacted the FAA in order "to overrule the judiciary's longstanding reluctance to enforce agreements to arbitrate and its refusal to put such agreements on the same footing as other contracts, and in the FAA expressed a strong federal policy in favor of resolving disputes through arbitration." Id. (citations omitted). Because arbitration is a contractual matter, prior to compelling arbitration pursuant to the FAA, a court must first determine that (1) an enforceable agreement to arbitrate exists, and (2) the particular dispute falls within the scope of the agreement. Kirleis, 560 F.3d at 160 (citation omitted). The FAA, which was specifically designed to overcome what was seen as judicial antipathy for arbitration agreements, however, creates a clear statutory preference for arbitration. Accordingly, in considering motions to compel arbitration, arbitration should not be denied "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." First Liberty Inv. Grp. v. Nicholsberg, 145 F.3d 647, 653 (3d Cir. 1998) (internal quotation marks omitted).

> In short:
>
> The Arbitration Act thus establishes a "federal policy favoring arbitration," Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983), requiring that "we rigorously enforce agreements to arbitrate." Dean Witter Reynolds Inc. v. Byrd, supra, 470 U.S., at 221, 105 S.Ct.,

at 1242. This duty to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim founded on statutory rights. As we observed in Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., "we are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals" should inhibit enforcement of the Act " 'in controversies based on statutes.' " 473 U.S., at 626-627, 105 S.Ct., at 3354, quoting Wilko v. Swan, supra, 346 U.S., at 432, 74 S.Ct., at 185. Absent a well-founded claim that an arbitration agreement resulted from the sort of fraud or excessive economic power that "would provide grounds 'for the revocation of any contract,' " 473 U.S., at 627, 105 S.Ct., at 3354, the Arbitration Act "provides no basis for disfavoring agreements to arbitrate statutory claims by skewing the otherwise hospitable inquiry into arbitrability." Ibid.

Shearson/Am. Exp., Inc. v. McMahon, 482 U.S. 220, 226 (1987).

Adopting this approach, courts have resisted efforts to carve out an exception to the arbitration act for claims, like those made here, which rest upon general attacks upon the formation of the contract that contains the arbitration provision. On this score, the courts distinguish between claims attacking the validity of the contract generally, and a more specific claim attacking the arbitration clause itself. Only the latter may be exempted from the FAA, not the former. As the Supreme Court has explained:

> Accordingly, if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making' of the agreement to arbitrate—the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally.

10

Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403–04, 87 S. Ct. 1801, 1806, 18 L. Ed. 2d 1270 (1967) (footnote omitted). Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445-46 (2006) (holding that whether a contract containing an arbitration provision was void for illegality was to be determined by arbitrator, not court); Merritt-Chapman & Scott Corp. v. Pennsylvania Turnpike Com'n, 387 F.2d 768, 771 (3d Cir. 1967) (following Prima Paint and holding that a general attack on a contract as being the product of fraud is to be decided under the applicable arbitration provision by the arbitrator).

Finally, in a case such as this where the parties expressly incorporate the American Arbitration Association Rules into their agreement, courts should allow the question of arbitrability to be addressed in the first instance in the arbitration forum, as the Rules state that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." See Richardson v. Coverall North America, Inc., 811 Fed. Appx. 100, 103 (2020).

     **C.**     **This Motion to Compel Arbitration Will Be Granted.**

Here, this Court has already ordered limited discovery on the factual issue of whether there is a valid arbitration agreement and we are now presented with a renewed motion to compel arbitration. Due to the procedural posture of the case at this time, it is now appropriate to judge this motion under a summary judgment

11

standard. Guidotti, 716 F.3d at 776. We can only compel arbitration or deny the motion where there is no genuine issue of material fact as to whether the parties entered a valid agreement to arbitrate. Kirleis, 560 F.3d at 159. If there is "a genuine dispute as to the enforceability of the arbitration clause," then we may proceed to a trial on "the making of the arbitration agreement." Guidotti, 716 F.3d at 776 (internal quotations omitted).

In response to the defendants' first motion to compel arbitration, Benjamin asserted that he was not provided with the entire agreement when the defendants requested that he sign it. He supported this argument by noting that the first page of the agreement states that it consists of four pages but that the agreement submitted by defendants was seven pages long. (Doc. 5-1). In our first memorandum opinion, we noted that Benjamin asked us to infer, from this information, that he was not provided with the entire agreement. (Doc. 14, at 9). We found that this was a purely factual dispute best left to discovery, as we were not at liberty to resolve the issue at that time. (Id.) Following limited discovery on this issue, Benjamin has conceded that the arbitration agreement was part of the contract that he signed.

The testimony adduced during the discovery period revealed that the original agreement was printed double-sided, which would result in four pieces of paper, containing a total of 7 pages worth of content. (Doc. 18-3, at 4, 6; Doc. 18-4, at 8). Defendant Kevin Berry as well as Korey Rustici, the officer manager at KMB,

testified at their depositions that Benjamin was presented with the agreement, took it home to review it, and returned it, signed. (Doc. 18-3, at 3; Doc 18-4, at 2-3). Benjamin maintains that he was only provided with a partial copy of the agreement; however he initially testified in his deposition that he only received the first page. (Doc. 19-5, at 7). He later stated that he was also provided with the last page, where he signed and dated the agreement. (Id., at 8). Even later in the deposition, Benjamin admitted that the address written on page six of the agreement is in his handwriting. (Id., at 10). Page six of the agreement would have been on the reverse side of the double-sided page containing page five, which is where the arbitration agreement appears. We agree with the defendants that the physical attributes of the document and this concession by Benjamin demonstrate that there was an arbitration clause in the agreement Benjamin executed on December 24, 2018.

In opposition, Benjamin again raises issues relating to the enforceability of the agreement itself, such as procedural unconscionability and lack of consideration. However, having found that the agreement contained an arbitration clause, we need not address these collateral issues relating to the enforceability of the agreement overall. Attacks on the validity of the contract itself, as opposed to attacks on the arbitration clause specifically, are within the province of the arbitrator. Prima Paint Corp., 388 U.S. at 406-07. "[U]nless the challenge is to the arbitration clause itself,

13

the issue of the contract's validity is considered by the arbitrator in the first instance." Buckeye Check Cashing, Inc., 546 U.S. at 445-46.

Benjamin's lack of consideration claim seems to conflate the question of lack of consideration to enter into the arbitration agreement and lack of consideration to enter into the entire seven-page agreement. Fairly construed, Benjamin's complaint brings a general claim that there was no consideration to enter into the agreement at all. (Doc. 1). Benjamin's complaint does not allege, and he does not otherwise demonstrate, that there was only a lack of consideration as to the arbitration agreement. Quite the contrary, he argues that he was not given the entirety of the agreement, that his promotion was in name only, and the circumstances surrounding his signature of the document lead to a conclusion of procedural unconscionability.

We recognize that the Supreme Court has carefully delineated between general attacks on contract formation and specific attacks on the making of the agreement to arbitrate. See Prima Paint Corp., 388 U.S. at 403-04; Buckeye Check Cashing, Inc., 546 U.S. at 445-46; Merritt-Chapman & Scott Corp., 387 F.2d at 771. In the instant case, Benjamin's arguments regarding lack of consideration and unconscionability are attacks on the entire agreement, rather than attacks specifically on the arbitration provision. Given the "federal policy favoring arbitration," Moses H. Cone Memorial Hospital, 460 U.S. at 24, which requires that we "rigorously enforce agreements to arbitrate," Dean Witter Reynolds Inc., 470 U.S. at 221, these

general attacks are insufficient to defeat a motion to compel arbitration. Thus, these arguments should be left to the arbitrator to decide.

Furthermore, the parties here expressly incorporated into their arbitration agreement the AAA Rules. The agreement provides that "[t]he procedural rules of the American Arbitration Association shall apply." (Doc. 18-2, at 6). We are obliged to honor this clear contractual language and defer to the AAA Rules. The AAA Rules state that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." American Arbitration Association, Commercial Arbitration Rules and Mediation Procedures, Rule 7(a). On this score, it is clear that the gateway question of arbitrability is within the authority of an arbitrator to decide.

Given the evidence adduced at the hearing, the plaintiff's concession regarding the contract, and the plain language of the contract, and consistent with the policies favoring arbitration embodied in the FAA, this renewed motion to compel arbitration will be granted, and this case stayed pending arbitration. [2]

---

[2] Once it has been shown that arbitration of a dispute is appropriate, the FAA require a court to grant a stay in favor of arbitration unless the parties have "clearly and unequivocally excepted a certain dispute from arbitration." In re Prudential Ins. Co., 133 F.3d 225, 231 (3d Cir. 1998). No such showing has been made here. Therefore, this case should be stayed pending arbitration.

## III.  Conclusion

Accordingly, for the foregoing reasons the defendants' renewed motion to compel arbitration and stay proceedings (Doc. 18) will be GRANTED and this federal action will be STAYED pending the outcome of the arbitration proceedings.

An appropriate order follows.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATED:   June 17, 2021